IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **LEROME BRANTLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **CIVIL CASE NO. 2:18cv471-MHT-JTA** |
| v. | ) |
| | ) |
| **OFFICER J. WHITTEN, et al.,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMEMT

COMES NOW the Plaintiff, Lerome Brantley (hereinafter "Mr. Brantley" or "Plaintiff"), by and through his undersigned counsel, Julian L. McPhillips, Jr., and K. David Sawyer, and respectfully submits the following Brief in Opposition to Defendants' Motion for Summary Judgment. (Doc. 62 and Doc 100).

COUNT I     EXCESSIVE USE OF FORCE

BY DEFENDANTS THOMAS, WHITTEN AND BURKETT

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); and the court must draw all reasonable

inferences in favor of the nonmoving party. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1326 (11th Cir. 1998). The trial court's function at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. Id. at 248; see also *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

Summary judgment is not a time for fact-finding; that task is reserved for trial. See , e.g. , *Tolan v. Cotton*, 572 U.S. 650, 655–57, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014). Rather, on summary judgment, the district court must accept as fact all allegations the non-moving party makes, provided they are sufficiently supported by evidence of record. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). So when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. See *Feliciano v. City of Miami Beach* , 707 F.3d 1244, 1247 (11th Cir. 2013). Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment. *Mize v. Jefferson City Bd. of Educ.* , 93 F.3d 739, 742–43 (11th Cir. 1996). See *Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020)

In addition, it is the party seeking summary judgment who bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Herzog v. Castle Rock Entm't*. 193 F.3d 1241, 1246 (11th Cir. 1999). Thus, "in reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

### A. STATEMENT OF FACTS

In 2018, Plaintiff was incarcerated at the Draper Correctional Facility. Plaintiff was incarcerated at Draper Correctional Facility in 2008. Plaintiff was not a danger to anyone while incarcerated and had not been violent to anyone. While incarcerated at the Draper Correctional Facility, Defendants Thomas, Whitten and Burkett (hereinafter referred to the "assaulting officers") used excessive force and assaulted the Plaintff causing Plaintiff to suffer personal injuries and continued pain and suffering. On or about, February 18, 2018, at approximately 1:40 a.m., the assaulting officers requested Plaintiff to turn over a cell phone. The Plaintiff

responded by offering to do as the officers asked. However, rather than agree to accept the cell phone from Plaintiff, each of the three assaulting officers took the following actions: (1) placed handcuffs on Plaintiff with his arms and hands behind his back; (2) placed a choke hold on Plaintiff with arms tightly around Plaintiff's neck; (3) snatched his head backwards; and (4) threw Plaintiff to the ground "face first." (Exhibit 1, Declaration of Lerome Brantley).

As stated in Plaintiff's *pro se* Complaint filed on or about May 7, 2018, at approximately 1:40 a.m., Officer Thomas ordered Plaintiff to take his pants off, pop his boxers, turn around and be handcuffed. (Doc. 1, p. 3; Plaintiff's Exhibit 3). While handcuffed, Officer Thomas was bending his right arm, Officer Burkett was twisting and bending his left arm, and Officer Whitten had placed Plaintiff in a choke hold. The three officers then forced Plaintiff to the ground. (Doc. 1, p. 5; Plaintiff's Exhibit 3). Plaintiff filed an Amended Complaint on July 16, 2018. (Doc. 18; Plaintiff's Exhibit 4). In his Amended Complaint, Plaintiff further explained: Officers Thomas, Burket and Whitten "had me handcuffed from behind while twisting my arms/wrists, choking me out in choke hold, forcing me to the ground face first about to mace me, until inmates in H-Dorm spoke up saying: 'ya'll don't have to do all that, he [is] already handcuffed.'" (Doc. 18, p. 3; Plaintiff's Exhibit 4).

As Plaintiff Brantley initially proceeded *pro se,* this Court should liberally construe his pleadings. *Trawinski v. United Techs*, 313 F.3d 1295, 1297 (11th Cir. 2002) (per curiam). Also, this Court should credit the "specific facts" pled in Plaintiff's sworn complaint and amended complaint(s) when considering his opposition to summary judgment. *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (per curiam) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form."). See *Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020).

In response to Plaintiff's allegations of excessive force, Officer Thomas asserts, although he had handcuffed Brantley's hands behind his back, "I observed inmate Brantley **reach to the front of his body while cuffed to the rear** and bring what appeared to be a cellular devise up out of his underwear to his right lower side." (Doc. 62-1, page 2). In addition, Officer Thomas asserts, "Brantley began to act out aggressively by squeezing my right hand." (Doc. 62-1, page 2).

Also, in response, Officer Whitten claims, he saw "Officer Thomas trying to grab something out of the side of inmate Brantley's boxers, which was later determined to be a cell phone. At this moment inmate Brantley started to resist … and I attempted 2-on-1 take down procedures on inmate Brantley. (Doc. 62-3, page 2).

5

According to Officer Pittmann, Plaintiff Brantley had to be **placed in handcuffs after refusing to comply** with the officers' instructions. (Doc. 62-2, p. 1). This directly contradicts all other testimony that Plaintiff Brantley complied with Officer Thomas' initial instructions by placing his arms and hands behind him to be handcuffed by Officer Thomas. In addition, as stated by Mr. Brantley, Ms. Pittman was not present to allegedly witness what occurred. (Exhibit 1, Declaration of Lerome Brantley).

Each officer's statement of what occurred at 1:40 a.m. on February 18, 2018, neither refutes nor disproves the Plaintiff's assertion and declaration that three officers together picked him up and threw him "face first" to the ground while his arms and hands were handcuffed behind his back. As a direct and proximate result, Mr. Brantley suffered serious injuries to his back and neck. Plaintiff requested and received continuous medical evaluations and treatment for these injuries for approximately three (3) years while he remained incarcerated. (Exhibit 2, DOC Medical Record excerpts, Doc. 112-1, 112-2, and 112-3).

In addition, after his release from incarceration in 2021, Mr. Brantley has continued to suffer physical and mental pain and suffering to the present date and continues to receive medical treatment for his injuries caused by Officers Thomas, Burket and Whitten. (See Plaintiff's Declaration, Exhibit 1). Since January 7, 2021,

Mr. Brantley has continued to receive medical treatment and physical therapy for these injuries to his back and neck. (Exhibit 1, Declaration of Lerome Brantley).

### B. LAW AND ARGUMENT

The Eleventh Circuit has long held that a single punch to a non-resisting detainee constitutes excessive force. See *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010); *Hadley v. Gutierrez,* 526 F.3d 1324, 1330 (11th Cir. 2008), *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008). Correctional officers in a prison setting can use pepper-spray or a takedown to subdue an inmate as long as a valid penological reason supports the use of such force. See *Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020); *Thomas v. Bryant*, 614 F.3d 1288, 1301–11 (11th Cir. 2010); and *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008).

Brantley claims in his Complaint, Amended Complaint and Declaration that Defendants Thomas, Whitten and Burkett handcuffed him with his hands behind his back, placed him in a choke hold, snatched his head backwards and then threw him "face first" to the ground. While throwing him to the ground can be a more extreme form of "forcing" him to the ground, there is nothing necessarily inconsistent about describing the excessive force used by the three officers, especially since the Plaintiff's Complaint and Amended Complaint are *pro se* filings. Taking into consideration the facts alleged, a reasonable jury could conclude that Brantley, with his hands cuffed behind his back, was grabbed around his neck, picked up by the

three officers, and thrown to the ground, landing "face first." See *Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020).

The Eighth Amendment, among other things, prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. As the Supreme Court has explained, "the unnecessary and wanton infliction of pain" qualifies under the Eighth Amendment as proscribed "cruel and unusual punishment." *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Nevertheless, the Supreme Court has instructed that what rises to the level of an "unnecessary and wanton infliction of pain" differs based on the type of Eighth Amendment violation alleged. Id.

"The core judicial inquiry" requires the Court to consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010), *Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020) (citation and quotation marks omitted). This standard requires a prisoner to establish two elements—one subjective and one objective: the official must have both "acted with a sufficiently culpable state of mind" (the subjective element), and the conduct must have been "objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8, 112 S.Ct. 995 (cleaned up).

With respect to the subjective element, "to have a valid claim on the merits of excessive force in violation of [the Eighth Amendment], the excessive force must

have been sadistically and maliciously applied for the very purpose of causing harm." *Johnson v. Breeden* , 280 F.3d 1308, 1321 (11th Cir. 2002) ; see also *Thomas v. Bryant* , 614 F.3d 1288, 1304 (11th Cir. 2010).

As for the objective component of an excessive-force violation, it focuses on whether the official's actions were "harmful enough," *Hudson*, 503 U.S. at 8, 112 S.Ct. 995, or "sufficiently serious," *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), to violate the Constitution. "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37, 130 S.Ct. 1175. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 37–38, 130 S.Ct. 1175. Instead, the Eighth Amendment prohibits force that offends "contemporary standards of decency," regardless of whether "significant injury is evident," though the extent of injury may shed light on the amount of force applied or "whether the use of force could plausibly have been thought necessary." *Wilkins*, 559 U.S. at 37, 130 S.Ct. 1175 (citation and internal quotation marks omitted).

In addition, the Court in *Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020), adopted its explanation in *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008), where the evidence did not indicate whether the officers' conduct occurred in

relation to Hadley's resistance. There, the Court reasoned, "It [was] theoretically possible that Hadley was punched then resisted, or even that he resisted first, but was punched after he stopped resisting." Id. Under those circumstances, it would be possible to find that the officers violated the Eighth Amendment <u>and</u> that Hadley resisted arrest. Id.

In the very similar case of *Johnson v. DeLoach*, 692 F. Supp.2d 1316 (M.D. Ala. 2010), inmate Johnson, while incarcerated at Draper, alleged how the officer began to choke him, placed his leg between his legs, lifted him off the floor and slammed him to the floor causing his back, head and left leg to hit a pole protruding from the wall. Johnson advised the attending nurse that a correctional officer slapped him in the face, choked him by the neck and slammed him to the ground. However, the nurse noted no signs or symptoms of distress, no signs of bruising nor any injury to Johnson's face or neck. Based on the nurse's evaluation, the nurse determined that no treatment or provision of medication was necessary for Johnson.

Johnson still argued he was entitled to proceed on his excessive force claim because he met his burden of showing a willful intent on behalf of the officers to inflict punishment for no reason and, therefore, had set forth a genuine issue of fact regarding whether the force employed by the officers was intentional or malicious and prohibited by the Eighth Amendment. In light of the opinion issued by the United States Supreme Court in *Wilkins*, the district court in *Johnson* agreed that the

de minimis nature of Johnson's injuries was not dispositive of his excessive force claim. *Wilkins*, 130 S.Ct. at 1177. Stated differently, the nature of the injuries suffered remained relevant to the court's determination of whether the assault actually occurred as described, and as to the amount of damages Johnson may recover.

In *Johnson*, as in this case, the officers denied the Plaintiff's allegations regarding the amount of force used and maintained that the force utilized did not constitute excessive force. Also, in *Johnson,* and in this case, the officers provided witnesses who asserted they saw no use of excessive force used against the inmate. Taking these arguments in consideration, the Court in *Johnson* concluded:

> [V]iewing the facts in the light most favorable to Johnson, as is required at this stage of the proceedings, the court concludes defendants Boozer, Bradford and Golson are not entitled to qualified immunity as the plaintiff has alleged facts sufficient to survive their motion for summary judgment regarding the excessive force claim lodged against them. *Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material fact exist regarding the need for the use of force by Boozer, the amount of force used by Boozer and whether Boozer acted "maliciously and sadistically" to cause harm. A genuine issue of material fact likewise exists regarding whether Bradford and Golson witnessed the use of excessive force and failed to intervene. Consequently, the motion for summary judgment with respect to the excessive force claim presented against defendants Boozer, Bradford and Golson in their individual capacities is due to be denied.

*Johnson v. DeLoach*, 692 F. Supp.2d 1316, 1328 (M.D. Ala. 2010).

In this action, Thomas, Whitten and Burkett are similarly not entitled to qualified immunity as Plaintiff Brantley has alleged facts sufficient to survive a motion for summary judgment regarding his excessive force claim. Specifically, *disputed issues of material fact exist* regarding the need for the use of force by Defendants Thomas, Whitten and Burkett; the amount of force used by these three Defendants; and whether these Defendants acted "maliciously and sadistically" to cause harm.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Brantley respectfully requests the Motion of Summary Judgment asserted by Defendants Thomas, Whitten and Burkett as to Plaintiff's claim of Excessive Use of Force be denied.

Respectfully submitted this 20th day September 2021.

/s/ K. David Sawyer
K. David Sawyer, Of-Counsel
(ASB-5793-R61K)
McPhillips Shinbaum, LLP
516 South Perry Street
Montgomery, AL 36104
T: (334) 239-7382
F: (334) 263-2321
kdsawyer64@outlook.com
Counsel for Plaintiff

/s/ Julian L. McPhillips, Jr.
Julian L. McPhillips, Jr.
(ASB-3744-L74J)
MCPHILLIPS SHINBAUM, LLP
516 S. Perry Street Montgomery, AL 36104
T: (334) 262-1911
F: (334) 263-2321
julianmcphillips@icloud.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this the 20th day of September 2021 a true and correct copy the foregoing was served electronically and/or by U.S. Mail to the following counsel of record:


Benjamin H. Albritton
Assistant Attorney General
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
334-242-7300 (T)
334-353-8400 (F)
Ben.Albritton@AlabamaAG.gov



/s/ K. David Sawyer
K. David Sawyer